PROVIDENCE & STONINGTON STEAMSHIP CO. *v.* VIRGINIA FIRE & MARINE INS. CO.*

(*Circuit Court, S. D. New York.* March 13, 1882.)

1. PUBLIC OFFICER—TRUST FUNDS—LIABILITY FOR.

A public officer, charged with a trust created by a public statute in respect to funds in his possession, cannot be made liable in respect to them by an attachment in favor of a person not claiming under the trust

2. SAME—CASE STATED.

Under the requirements of a statute of the state of New York, defendant, a Virginia corporation, had deposited certain bonds with the superintendent of insurance, to be held to pay liabilities upon insurance policies made in favor of citizens of New York, which said bonds were to be returned to defendant by said superintendent upon satisfactory evidence that all such liabilities had been satisfied or terminated. Plaintiff, a Rhode Island corporation, brought suit on a policy of insurance issued to it by defendant, and levied an attachment upon the bonds in the hands of the superintendent. *Held,* upon a motion to vacate such attachment, that the bonds were not subject to such levy, they being held by a public officer by authority of law under a specified trust, in which plaintiff's claim was not included.

Motion to Vacate Attachment.

*Wilhelmus Mynderse,* for the motion.

*Wheeler H. Peckham,* opposed.

BLATCHFORD, C. J. The plaintiff is a Rhode Island corporation. The defendant is a Virginia corporation. This suit is brought to recover $5,000 on a policy of marine insurance, issued by the defendant to the plaintiff, insuring a steamer against marine perils. It was brought in a court of the state of New York, and removed into this court. On the bringing of the suit in September, 1880, the state court issued an attachment against the property of the defendant as a foreign corporation having property within the state of New York, and it was levied on $10,000 of United States 4 per cent. registered.

*Reported by S. Nelson White, Esq., of the New York bar.

bonds in the hands of the superintendent of the insurance department of the state of New York, at Albany. The said bonds were deposited with the insurance superintendent by the defendant in February, 1873, under the provisions of the act of the legislature of New York passed May 11, 1865, (Laws of New York, 1865, *c.* 694, p. 1408.) That act provides that—

"Whenever the existing or future laws of any other state of the United States shall require of insurance companies incorporated by or organized under the laws of this state, and having agencies in such other state, or of the agents thereof, any deposit of securities in such state for the protection of policy-holders, or otherwise, or any payment for taxes, fines, penalties, certificates of authority, license fees, or otherwise, greater than the amount required for such purposes from similar companies of other states by the then existing laws of this state, then, and in every such case, all companies of such states establishing, or having heretofore established, an agency or agencies in this state, shall be and are hereby required to make the same deposit, for a like purpose, in the insurance department of this state, and to pay to the superintendent of said department for taxes, fines, penalties, certificates of authority, license fees, and otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such state upon the companies of this state and the agents thereof."

On the third of February, 1866, the legislature of the state of Virginia passed an act, (Laws of Virginia, 1865–6, *c.* 96, p. 206,) the first section of which, as amended by an act passed March 25, 1871, (Laws of Virginia, 1870–1, *c.* 194, p. 284,) provided that no insurance company not incorporated under the laws of the state of Virginia should carry on its business in that state without first obtaining a license; that no such company should receive such license until it should have deposited with the treasurer of the state certain specified securities, and, among them, bonds of the United States, to an amount equal to 5 per cent. of its capital stock; the deposit of securities to be in no case of less cash value than $10,000, and not being required to be of greater cash value than $50,000. The act of Virginia of 1866 provides that the bonds are to be held to pay the liabilities of the insurance company upon its insurance policies made in favor of any citizen or inhabitant of Virginia, and the treasurer is directed to apply the interest on the bonds and the proceeds of the sale of them to the payment of such liabilities. The act also provides that if the company shall cease to carry on business in Virginia, and its liabilities on its insurance policies, whether fixed or contingent, to the citizens and inhabitants of Virginia shall have been satisfied or shall have terminated, on satisfactory evidence of that fact to the treasurer he

"shall deliver" to such company the bonds deposited with him by it, or such of them as remain after paying its liabilities above specified; or if the company shall reduce the amount of its liabilities, both fixed and contingent, upon its policies of insurance to the citizens and inhabitants of Virginia below the amount of the bonds in the possession of the treasurer, he "may deliver" to such company a part of the bonds deposited by it with him, but so that the bonds in his possession shall always be equal to its liabilities upon the insurance policies to the citizens and inhabitants of Virginia.

On the thirty-first of August, 1879, the defendant withdrew its agency from the state of New York. It had outstanding policies of insurance against fire, issued to residents and inhabitants of New York, to an amount exceeding $10,000, from that date until February 15, 1881, on which day it cancelled all its risks outstanding in New York, and called its policies in. It then applied to the insurance superintendent for the said bonds, but he refused to deliver them because of said attachment. The bonds were so deposited solely to conform to the requirement of the said statute of New York.

The defendant having appeared and answered, removed the suit into this court, and now moves to set aside the levy under the attachment. The motion is made with the concurrence of the insurance superintendent. It is plain that the defendant deposited the bonds under the said statute of New York because the act of Virginia required from a New York insurance company a deposit of securities for the protection of policy-holders which the statutes of New York did not otherwise require from a Virginia insurance company. Prior to the act of 1865, of New York, there was no law of New York requiring any deposit from a fire or marine insurance company of another state of the United States, nor has there been any since, except what is required under the provisions of the act of 1865. The deposit required by section 23 of the New York act of June 25, 1853, (Laws of New York, 1853, c. 466,) is required only from fire insurance companies incorporated or organized under a foreign government, as distinguished from another state of the United States.

The enactment by Virginia of its acts of 1866 and 1871 brought into operation on the defendant the New York act of 1865. But the deposit made under that act of 1865 is made "for a like purpose" with the purpose for which a deposit is made in Virginia under the Virginia acts of 1866 and 1871, and for no other or further purpose. That purpose is the purpose of paying the liabilities of the depositing company on its insurance policies to citizens and inhabitants of the

state where the deposit is made. When such company ceases to carry on business in such state, and those liabilities no longer exist, the depositing company is entitled to receive back the bonds deposited. They were not deposited for the protection of the plaintiff in this case, nor can they be held under the statutes of New York for its protection by the insurance superintendent, or applied by him to any liability of the defendant to the plaintiff, aside from any force there may be in the levy under the attachment.

The question is whether the bonds were subject to such levy in the hands of the insurance superintendent. The plaintiff contends that the bonds are property of the defendant in this state, and subject to the levy, particularly as they are no longer held for the protection of any citizens, residents, or inhabitants of this state holding policies issued by the defendant.

The insurance superintendent is a public officer of the state, created by statute, and charged with the execution of the laws in relation to insurance. No case of acknowledged authority is found which holds that a public officer of a state, charged with a trust created by a public statute of the state in respect to funds or securities in his possession, can be made liable in respect to them by an attachment in favor of a person not claiming under the trust. Decisions in analogous cases, as to persons holding property or funds by authority of a statute or of the law, under a trust imposed in regard to them, are numerous. *Brookes* v. *Cook*, 8 Mass. 247; *Colby* v. *Coates*, 6 Cush. 558; *Columbian Book Co.* v. *De Golyer*, 115 Mass. 67, 69; *Harris* v. *Dennie*, 3 Pet. 292; *Buchanan* v. *Alexander*, 4 How. 20. The principle was applied by the court of appeals of Virginia, in *Rollo* v. *Andes Ins. Co.* 23 Gratt. 509, to a case like the present.

The treasurer of Virginia, under the Virginia acts of 1866 and 1871, held bonds deposited with him by an Ohio insurance company. It ceased to do business in Virginia, and its liabilities, fixed and contingent, to citizens or residents of Virginia, were satisfied. This occurred about a month after an attachment in a suit brought in Virginia against the Ohio company, by a citizen of Illinios, had been levied on the bonds in the hands of the treasurer. The Ohio company and the treasurer moved to abate the attachment, (1) because the state and its officers and agents were not subject to attachment process; and (2) because the property of the Ohio company in the state treasury was not liable to attachment at the suit of a non-resident of Virginia, but was held in trust there for the benefit of the Virginia creditors of the company, and, as to any residue, after the

satisfaction of those claims, in trust, to be returned to the company. The court held, unanimously, that the treasurer of the state, having the control and custody of insurance funds and securities under an act of the legislature, was not subject to the proceeding by attachment, even though the foreign company had satisfied all its liabili- ·ties in the state. The court said:

"It is a. question that concerns the state. It is certainly not compatible with her sovereignty and dignity to be arraigned before her own tribunals, at the suit of individuals, in any other mode than is prescribed by her statutes. Nor is it consistent with her interests, or the proper administration of public affairs, that her officers shall be arrested in their public duties, and required to answer before the courts for funds or securities committed to their custody for a specific purpose, under authority of a public law. * * * .The treasurer is required by the statute to retain the securities in the treasury, for the special object contemplated by the act, until the liabilities of the company are settled or terminated. So long as anything remains to be done, so long as these liabilities continue, he is expressly prohibited from disposing of or surrendering them. ˙ And when the treasurer is satisfied these securities or funds are no longer required to meet any liabilities of the company in the state, he is authorized and required to deliver them to the company. This is the extent of his authority. His power and duty are fixed by the law. Now, whether this does or does not constitute a contract on the part of the state with the insurance company, it is the law for the treasurer, fixing the measure of his authority and his responsibilty. He holds the securities in trust, to be administered, first, for the people of Virginia, and then for the company mak- ˙ing the deposit. This is the destination given them by the law, controlling not only the treasurer, but the courts also; and it would seem there is no power, except that of the legislature, to change such destination. ˙* * * In-returning the securities to the company depositing them, the state complies with her engagment, as expressed through the statutes. The foreign cred- ˙itors have no just cause of complaint. As to them the securities are in the same condition they occupied before the deposit was made."

These views are sound, and nothing can be added to their force. The statute of New York is to be regarded as if it were in the same words as the Virginia statute, in respect to the purpose and terms and conditions of the deposit. Under such a statute the funds are not liable to attachment at the suit of a person not claiming under a policy issued to a citizen or inhabitant of New York.

The motion to set aside the levy on the securities in the hands of the insurance superintendent is granted.