### CORBITT v. FARMERS' BANK OF DELAWARE et al.

(Circuit Court, E. D. Virginia. March 19, 1902.)

1. REMOVAL OF CAUSES—PROCEEDINGS AFTER REMOVAL.

The removal of a cause from a state to a federal court does not admit that it was rightfully pending in the state court, nor deprive the defendant of the right to move for the abatement of an attachment by which that court acquired jurisdiction.

2. ATTACHMENT—PROPERTY SUBJECT TO ATTACHMENT—MONEY IN REGISTRY OF ANOTHER COURT.

Moneys paid into a federal court pending litigation in regard thereto, and placed in its registry, remain in its custody until paid out, pursuant to law, by its order, and are not subject to attachment by any other court; the jurisdiction of the court over such funds is not extinguished by the entry of a final decree or order for their disbursement, but continues until such decree or order has been executed.

In Equity. On motion to abate attachment.

McLemore & Corbitt, for complainant.
Heath & Heath, for defendants.

WADDILL, District Judge. By decree entered in the United States district court for the Eastern district of Virginia, on the 23d day of December, 1901, in the matter of the West Norfolk Lumber Company, in bankruptcy, a check was directed to be drawn in favor

of the defendant the Farmers' Bank of Delaware, or Heath & Heath, its counsel, on the funds to the credit of the court, in its registry in the City National Bank of Norfolk, Va., for the sum of $12,316.49. On the 27th of December a check pursuant to such order was duly issued and delivered to the defendant bank's counsel. On the 26th of December this suit was instituted in the court of law and chancery of the city of Norfolk, by the trustee of the bankrupt company, asserting certain preferences claimed to have been made to the defendant bank within four months of the bankruptcy, in which suit an attachment was sued out, and on the morning of the 27th served upon the president of the City National Bank of Norfolk, and Heath & Heath, attorneys, before the payment of the check was demanded of the bank. By proper proceedings in the state court the cause was regularly removed to this court, and is pending therein, and is now before the court upon a motion to abate the attachment, sued out and executed, as aforesaid, upon the officers of the registry of the court and the attorneys of the defendant company.

The removal of the cause from the state court to this court does not disentitle the defendant bank to move to abate the attachment sued out, nor does it admit that it was rightfully pending in the state court, or that the defendant could have been compelled to answer therein; and in this court the defendant can avail itself of any and every defense, duly and seasonably reserved and pleaded, to this action, in the same manner as if the suit had been originally commenced therein Goldey v. Morning News, 156 U. S. 523, 525, 15 Sup. Ct. 559, 39 L. Ed. 517; Railway Co. v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431.

The question presented by the motion to abate the attachment in this cause is whether moneys paid into court pending litigation in regard thereto, and placed by order of the court in its registry or some other designated depository, pursuant to law, are the subject of attachment emanating from another court. This question is one of importance, as it not only affects the orderly administration of justice in the several courts, but goes further, and tends, as in this case, to thwart and annul the carrying out of the court's judgment, in a case fully litigated, with the parties in interest all before it. Money paid into the registry of the court, pursuant to law, can only be withdrawn therefrom, by the very terms of the act of congress providing for the deposit, "by the order of the judge, or the judges of said court, respectively, to be signed by such judge, or judges, and to be entered and certified of record by the clerk." When a court causes funds to be so placed in its registry, they are to the credit of the court itself, there placed and held, to the end that its decrees and orders in respect thereto may be obeyed and carried out in accordance with its judgment rendered; and no court, other than one having a supervisory power over the acts of such court, can by any act of its own, or any decree, order, or process emanating from it, except with its leave, assert any claim to, or secure any right in or lien upon, such funds, so long as the same remain under its control. To entertain a contrary doctrine to this would not only work untold mischief and delay in legal proceed-

ings, but would result in innumerable conflicts between the courts themselves; and the consequence would be that funds once paid into court, with a view of having the rights of parties litigant thereto adjusted and determined, instead of being disposed of by the termination of the particular controversy, would be involved in an endless chain of litigation. This subject has been before the courts, state and federal, too frequently to now admit of serious cavil or doubt. Wallace v. McConnell, 13 Pet. 136, 150, 151, 10 L. Ed. 95; The Lottawana, 20 Wall. 201, 22 L. Ed. 259; Jones v. Bank, 22 C. C. A. 483, 76 Fed. 683, 686, 687, 35 L. R. A. 698; In re Forsyth (D. C.) 78 Fed. 296, 302–304; In re Cunningham, Fed. Cas. No. 3,478; Tuck v. Manning, 150 Mass. 211, 22 N. E. 1001, 5 L. R. A. 666; Curtis v. Ford, 78 Tex. 262, 14 S. W. 614, 10 L. R. A. 529; Holker v. Hennessey, 143 Mo. 80, 44 S. W. 794, 65 Am. St. Rep. 642; Allen v. Gerard, 21 R. I. 467, 44 Atl. 592, 49 L. R. A. 351, 79 Am. St. Rep. 816.

The position taken by counsel for complainant, that the court, having entered its final order in respect to the money in question, had exhausted its jurisdiction over the same, and that such funds then remain subject to seizure by attachment or other legal process, as any other property belonging to the defendant bank, is equally fallacious. A conclusion in favor of parties litigant to any controversy would be barren of good, if the court rendering the decision was powerless to cause its decrees and orders to be put into operation and duly executed; and such a result, as to moneys in the court's own registry, would, indeed, leave it in a helpless and pitiable plight.

In Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253, Chief Justice Marshall said:

"The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process, subsequent to the judgment, in which jurisdiction is to be exercised."

In Osborn v. U. S., 91 U. S. 474, 479, 23 L. Ed. 390, Mr. Justice Field, speaking for the supreme court, said:

"The power of the court over moneys belonging to its registry continues until they are distributed pursuant to final decrees in the cases in which the moneys are paid. If from any cause they are previously withdrawn from the registry without authority of law, the court can, by summary proceedings, compel their restitution."

Reference has been made by complainant's counsel to the cases of Gumbel v. Pitkin, 124 U. S. 131, 154, 8 Sup. Ct. 379, 31 L. Ed. 374; Earle v. Conway, 178 U. S. 456, 20 Sup. Ct. 918, 44 L. Ed. 1149; Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855. Upon a careful examination of these cases, nothing will be found inconsistent with the views herein expressed; and the several state court authorities cited holding a contrary doctrine, notably Weaver v. Davis, 47 Ill. 235, and Dunsmoor v. Furstenfeldt, 88 Cal. 522, 26 Pac. 518, 12 L. R. A. 508, 22 Am. St. Rep. 331, are not in accord with the preponderance of authorities, state and national.

It follows from what has been said that the attachment should be abated, and a decree may be accordingly so entered.